Good morning, Your Honors. My name is Saad Ahmed, and I represent the petitioners who are present in court today. The petitioner is a native and citizen of the People's Republic of China, and she seeks review of the Board's final order of removal in which the Board affirmed the immigration judge's denial of her asylum, withholding of removal, and relief under the Convention Against Torture Applications. The Board adopted the idea's decision and affirmed the decision on three main grounds. First, the Board concluded that the petitioner was statutorily ineligible for asylum, and she did not qualify for any of the exceptions. Secondly, the Board concluded that the petitioner was not credible. Third, the Board concluded that the petitioner's burden of proof was not met. Why would not the fact that she subsequently had, after the time had run, because she'd had, she had, was two children, and then the time would start running then, and that year ran, and, but during that year, she had a third child. Why would not the year start again on the theory that if it's likely that she would have had a sterilization problem going back to China with two children, it's even more likely, is it not, the government would panic a little bit if she's coming into the country with three children, or four children, or five children. Pretty soon they're going to say, wait a second, why doesn't the third event, that is to say the third child, why would not that start the time again? I agree with Your Honor. That's what What's your theory? Let me put the back side of that question. If two is the rule, that does it make that there was a third, because the time was critical with two. So the issue is two or three, isn't it? The issue is whether two is the critical time for running the year, or three. And you urge it that we have to start again with three, and your theory is because it's more urgent. Yes. But how urgent do you have to be? All of her proffered evidence, relatives, they were all sterilized after two. Yes. Your Honor, under this Court's exceptional circumstance analysis, an exceptional circumstance does not just include a new basis for asylum. But what's new about, if it's a no-no to have more than two, and all of her relatives were allegedly sterilized at that point, at two, then what's so different about having more children? Well, I think what it comes down to is that why should an assailant have more than one child? The standard shows that in China, you can have more than one child, especially if the first child is a girl. And the population control policy in China is not uniform. It's not uniformly applied everywhere. Some places apply it more rigorously than others. So in this case, it made no sense for her to apply for asylum when her second child was born in 2003. And then when her third child was born in 2005, I believe that that was the right point, because now we're not going to be able to have more than one child. If she hadn't applied on the third child and she waited and then she had a fourth child, would it start over again in your view? No. Then it would not start over again. Okay. Because we wouldn't – you know, there has to be some kind of a limitation as to the asylum claim. Why wouldn't it start again? I would say that it would not start again because I think after having the third child, there is enough evidence that the Chinese government would actively seek out people, because then it is beyond the two-child limitation that she had. But what's the evidence of that? The evidence of that – You're saying there might be a – there's no – I didn't read any evidence in the record that they really go after people with three. I didn't read anything about that. Well, there's no – well, there's – there's substantial evidence in the record that the Chinese government may allow two children, two children, if the first one is a daughter, if a girl. Well, that starts the – but that starts the – after two, they permit the child. That just means they aren't going to kill the child. But – but the relatives were sterilized thereafter. The children are healthy and well and they're growing, but they don't want the parents to have number three. So why wouldn't that be the date of starting? I would say the date of starting – again, it comes down to the same issue. Why should an asylum applicant apply for asylum at the earliest possible time? I believe Judge Reinhart, in his opinion, in Singh versus – I don't believe it's – yeah, it's not Singh. Actually, in the case of Singh versus Holder, where this Court found that when an event makes the likelihood of persecution stronger, that that is a changed circumstance in this case. Well, that's – I think you're twisting that one a little bit. I don't want to talk to you about the Bahura case that you recite. In that – in that situation, the change of circumstances were based upon conditions that changed in India. Whereas in this case, the changed circumstances were based upon the actions that your client took. That's quite different, is it not? Yes and no. But the changed circumstances exception doesn't discriminate. Why no? It doesn't discriminate between events that take place in a foreign country. Well, I guess my point is if a petitioner can volitionally change this based upon his or her actions, then you could presumably, following up on what my colleague mentioned, you could presumably stretch this out indefinitely based upon yet another child, yet another changed circumstance. And Bahura that you rely upon was based upon a third-party event that the petitioner did not control. Here, the petitioner controlled this. Why should we not distinguish Bahura on that basis? I think because Congress did not – Congress made a distinction. For example – What are you relying upon for that? Motions to reopen, for example, in motions to reopen context subsequent to, you know, a final order, there are restrictions. Every court, including the court here, has concluded that a person cannot manufacture a circumstance to be able to reopen the case. That's not the case here. You know, there's no distinction here. Congress did not say that a circumstance that was created by the petitioner cannot be a basis for – Well, let's go back and look at this realistically. If your client had not had a third child, we wouldn't even be talking about this, would we? The one year would pass, that's the end of the story, right? Well, she may still have a claim, but it would be a weaker claim. And what would the claim be? If she only had two children instead of three? Yeah. Her claim would be that there is a reasonable probability that she would be harmed upon returning to China. And then also – As you just said, there's no problem with that because the government of China allows you to have two children, particularly if the first child is a girl. Well, but – Isn't that inconsistent with what you previously said? No, but the record also shows that the population control policy is applied unevenly all over the country. In some parts of the country, it's more rigorous. In some parts of the country, it's not. So it all depends. It all depends. And I'd like to point out as well that we also argued in the brief that there is an extraordinary circumstance exception to this case as well. I mean, it makes no sense for someone who's married to a U.S. citizen to apply for asylum. It makes no practical sense at the earliest possible point when there is a possibility that she may be able to get her green card through her husband. Of course, that – let's assume you could jump over this one-year hurdle. The somewhat tangled timing of the marriages and the testimony, you'd still have to overcome the credibility issues, correct? Yes, absolutely. And how would you do that? Well, first of all, there were two bases upon which the IJ made his adverse credibility determination. I think the first issue was that the government presented an affidavit from her former husband on the day of the trial. Not before, but on the day of the trial, her husband was not subject to cross-examination. Her – she had no notice that her prior marriage would be an issue at the hearing. She had no opportunity to provide evidence to refute his allegations. And more importantly, Your Honor, her ex-husband was – excuse me – was subject to prosecution, criminal prosecution, for allegedly engaging in marriage fraud. So his affidavit was a weak evidence at best. And secondly, the immigration judge also concluded that the petitioner failed to corroborate her testimony with affidavits from her relatives in China. Again, I will say that immigration judge cannot make an adverse credibility determination based on failure to provide documents from China unless the petitioner was provided with an opportunity to explain why that evidence is not available. In this court, adverse credibility cannot be based unless the person is given a reasonable opportunity to explain why the documentations that were material to the case were not presented at the hearing. In this case, that did not happen. If you look at the record, the judge just assumed that simply because she was in contact with her family members in China that she would be able to get documents from them. The court did not consider – the judge did not consider that documents – obtaining documents from China is not easy most of the times, especially – and this Court has recognized that obtaining affidavits and letters from relatives living abroad oftentimes very difficult, especially from communist country where – where the So in this case, the judge assumed that she was not credible because she could have provided letters from her – her sister and her mother in China. And therefore, I think the – I mean, the credibility determination does not support the Real ID Act standard here. I think the Real ID Act gives a lot of leeway to immigration judges in which to make credibility determination, but if they don't give a blank check to And, Your Honor, I would like to request that this Court overturn the immigration judge's credibility determination and the one-year issue. And as far as the burden of proof is – is required, excuse me, I would request the Court to – excuse me, I would request that the Board see it – see an adverse credibility determination which was erroneous. It permeated and infected the burden of proof issue. All right. You've exceeded your time, but made your point. Thank you very much. Good morning. May it please the Court, my name is Jennifer Singer and I represent the United States Attorney General, the respondent in this matter. The agency properly denied the Petitioner's applications for relief for several reasons. First, her application for asylum was time barred and she did not meet an exception for either changed or extraordinary circumstances. As to the changed circumstances exception, she claims that her circumstances changed with the birth of her third child. However, any alleged change of circumstances occurred with the birth of her second child. She testified that both her sisters were taken for sterilization after the birth of their second child and based upon her own testimony, any violation would have occurred after the birth of her second child. Yet, she did not apply for asylum until two years later, which is an unreasonable delay. The Petitioner relies on VAHORA for the proposition that her circumstances changed with the birth of the third child. However, as this Court mentioned, VAHORA is different in that that involved changes in the home country circumstances and not personal circumstances. And the birth of the third child here did not strengthen her claim for asylum. In China, it's essentially a one child policy and any violation after that or alleged violation with a second or third child is the same. It's not a worse offense to have three children or four children. Doesn't it matter if it's a girl and doesn't it matter what area it is and doesn't it matter? Sometimes it's a fine and sometimes it's sterilization. I mean, there's quite a canopy of approaches from the advocate record. There is very enforcement of the policy. However, in her testimony, the Petitioner never said that she would be able to have a third child if the second was a girl or she would be able to have two children if the second was a girl or the first was a girl. She testified that two, that her family members were sterilized after the birth of her second child. May I ask you this? If she had filed her request for the torture basis, if she had filed that request within a year of the birth of her second child, would her application have been timely at that time? After she gave birth to the second child, is that what starts the one-year time limit? There's no time limitation, is there? For asylum or for asylum? No, for deferral, for torture. No, there's not. Okay, the only time limit is on asylum. So if, talking for a moment about asylum, would the year start in your position based upon the birth of the second child? Yes, it would. Based upon her testimony here, it would start with the birth of her second child. As the dissent mentioned in Bahara, it's just, the point of the bar to asylum is to not allow someone to come here and sit on a claim for asylum. Okay, but most of our discussion seems to me this morning hasn't been based on that. It's been based on the torture statute, not upon, or the treaty, not upon the one-year, for, that is, where you say we do not run. You're basing your case on the likelihood of torture. You're talking about when she'd be sterilized. And your point is that the danger for that, why is there a one-year statute on that? The one-year bar applies only to asylum and not to the Convention Against Torture. Well, then she didn't have any statute of limitations on torture? No, she did not. So why do we worry about whether she made application for torture protection right after number two, or whether she waited until she had number three? We don't. We only worry whether she filed the asylum application within one year of her asylum application. But suppose she's not relying on asylum. She's just relying on the torture. In that case... Is that a timely application? You can apply for withholding of deportation under the Convention Against Torture, but aside from the asylum issue, the immigration judge and the Board of Immigration Appeals both determined that the evidence was insufficient, even on the torture claim basis, to show that someone would be... That they would actually be sterilized. They determine if there is a threshold asylum, and if they determine there isn't, ergo, you can't meet the higher CAT standard, correct? Not exactly. Here, the immigration judge found that even assuming her credibility and assuming corroboration, that the evidence and record did not show that someone, a Chinese national returning to China with in excess of one child would be sterilized upon return. Okay. So the two issues are totally separate. That's a different standard, though, the CAT standard. That's my point. Yes. And the two claims... If you can't meet the asylum standard, you can't meet the CAT standard in terms of the evidence. In terms of the evidence, yes. No, but you're not saying that if she doesn't qualify because of time for asylum... That she doesn't have a torture claim. You're not claiming that. No, not at all. She's still eligible for... She does have a torture claim present. And she has a withholding of removal claim as well. And the only issue then is whether there's enough evidence to say that it's an objectively reasonable danger that she might be sterilized or that she would suffer torture. Exactly. And in this case, aside from the corroboration issue, aside from the credibility issue, at the end of the day, the evidence in the record did not show that a Chinese national returning to China with U.S.-born children met that threshold. All right. We understand your position. But the point I wanted to clarify is it's not your position that she has to first qualify for asylum... No. ...and then we talk about torture. No. We can go straight to torture, even assuming that she doesn't have any asylum claim. Yes. Most claims are always just analyzed in an asylum context because, as you mentioned, if you don't meet the lower burden, it's more difficult to meet the higher burdens. In addition, the board properly denied her asylum claim on the fact that she failed to show extraordinary circumstances. She lost her legal immigration status on June 30, 2003, not November 2005, after the denial of her pending I-485 application. What is the standard of proof for the horror? Is it objectively reasonable to believe that there is a possibility of torture? Is that the standard? Is it... Or does she have to prove by a preponderance of the evidence that she will be tortured? Or does she have to prove by clear and convincing evidence? Or what? Clear and... Or is it more likely than not that upon return to China she would be tortured? Well, that's preponderance of evidence, isn't it? More likely than not. More likely than not. Clear probability. Standard. And she did not meet that standard. The evidence... So you put her on the strength of the evidence that she presented. On the third finding of the Board of Immigration Appeals, after the time bar issue, the credibility issue, they found that the evidence did not show, for withholding of removal and CAT, that objectively there was not sufficient evidence to meet her burden to show that it would be more likely than not that she would be persecuted or tortured upon return to China. And what is our scope of review on our duty to review the BIA? This Court reviews for substantial evidence, meaning that the petitioner would have to show that the evidence compels a reversal of the Board or the immigration judge's decision. And the evidence is not so compelling to overturn the Board's denial of... But if her only burden of proof here is to show that there was substantial evidence to support the BIA's decision, even if we should disagree with it, are we obligated to affirm it? Yes. If there's substantial evidence to support the Board's finding that she failed to meet her eligibility for asylum, withholding, and convention against torture, then this Court has to affirm that decision. And I see my time is running out, so I would just say, at the end of the day, despite issues with credibility or corroboration, she failed to show an exception to the asylum claim. And in terms of withholding of removal and then withholding under the convention against torture, the Board probably found that she failed to meet her burden with objective evidence showing that Chinese national returning to China with U.S. citizen children would be subjected to sterilization. Thank you. I just have one quick question here. As I read the IJ's decision, it seemed pretty clear to me he was convinced, or the IJJ was convinced, that the petitioner had simply gamed the system, had no credibility at all. My concern is whether that infected the view of whether there was a probability of torture on return to China were that to happen. There was testimony about that there were no U.S. diplomats that reported that anything would happen, and yet there does seem to be some evidence that if you're in a rural setting, something could happen. How should we weigh that? I would say first that the immigration judge, despite concerns of credibility, did go on to assume petitioner's credibility to make the torture finding. And there was nothing in the evidence that the petitioner stated that she was from a rural area. And in any event, the State Department reports would say that returnees from the United States with U.S. born children are not subject to sterilization. There was no real contrary evidence, and that was substantial enough to meet the burden here. Is that correct? Yes, and even if there were, which the Board assumes, the State Department evidence outweighed that. Okay. Thank you. Thank you very much. Thank you. We have a minute, Mr. Ahmad. I'd just like to add a few, something to what Judge Smith just asked. I agree that the credibility determination, it infected the burden of proof issue in this case. And secondly, even if the judge assumed that the petitioner was credible, then under this Court's holding in Wren v. Holder, she should have given the petitioner the opportunity to provide documentary evidence to meet her burden of proof. So we believe that if credibility determination is reversed in this Court, the case must be remanded to the Board for a determination on the burden of proof issue. I think it's very dispositive on this case. Thank you. Thank you. We have your arguments in mind. Thank you to both counsel this morning. The case of Ma v. Holder is submitted.
judges: Brewster, McKeown, Smith